UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>EDWARD HUGLER, ACTING SECRETARY OF LABOR, and UNITED STATES DEPARTMENT OF LABOR,<br><br>Defendants. | **Civil Action No. 3:16-cv-1476-M**<br><br>Consolidated with:<br><br>3:16-cv-1530-C<br><br>3:16-cv-1537-N |

### MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs' Emergency Motions for Injunction Pending Appeal (ECF Nos. 144 & 145). For the reasons stated below, the Motions are **DENIED**.

**I.   Background**

The facts and circumstances surrounding Plaintiffs' challenge to three rules promulgated by the Department of Labor ("DOL") are discussed in the Court's February 8, 2017, opinion granting summary judgment in favor of the Defendants. *See Chamber of Commerce of the United States of Am. v. Hugler*, 3:16-CV-1476-M, 2017 WL 514424 (N.D. Tex. Feb. 8, 2017) (ECF No. 137). On February 9, 2017, the Court entered a final judgment in favor of the Defendants (ECF No. 139). On February 28, 2017, Plaintiffs filed a notice of appeal (ECF Nos. 141 & 142). On March 10 and 11, 2017, Plaintiffs filed Emergency Motions for Injunction Pending Appeal (ECF Nos. 144 & 145), and requested the Court to issue its decision by March 20, 2017. The DOL filed its Response (ECF No. 152) on March 17, 2017.

The DOL's final rules were set to become effective on April 10, 2017. However, on February 3, 2017, the President of the United States issued a memorandum directing the Secretary of Labor to determine whether the rules will "adversely affect the ability of Americans to gain access to retirement information and financial advice."[1] The memorandum directs the DOL to consider whether the rules "harm investors," cause "disruptions to the retirement services industry", are "likely to cause an increase in litigation," or are likely to cause an increase in the "prices investors and retirees must pay to gain access to retirement services."[2] On March 2, 2017, the DOL issued a notice of proposed rulemaking to extend the rules' applicability date by sixty days.[3] Comments regarding the potential sixty-day extension were due on or before March 17, 2017, and comments regarding the analysis described in the President's memorandum must be submitted on or before April 17, 2017.[4] On March 10, 2017, the DOL announced it would not initiate immediate enforcement action whether or not the April 10 applicability date were delayed.[5] The temporary enforcement policy states:

> In the event the Department issues a final rule after April 10 implementing a delay in the applicability date of the fiduciary duty rule and related PTEs, the Department will not initiate an enforcement action because an adviser or financial institution did not satisfy conditions of the rule or the PTEs during the "gap" period in which the rule becomes applicable before a delay is implemented, including a failure to provide retirement investors with disclosures or other documents intended to comply with provisions of the rule or the related PTEs.
>
> In the event the Department decides not to issue a delay in the fiduciary duty rule and related PTEs, the Department will not initiate an enforcement action because an adviser or financial institution, as of the April 10 applicability date of the rule, failed to satisfy conditions of the rule or the PTEs provided that the adviser or financial institution satisfies the applicable conditions of the rule or PTEs, including

---

[1] Memorandum from the President of the United States, to the Secretary of Labor (Feb. 3, 2017), 82 Fed. Reg. 9675, available at https://www.whitehouse.gov/the-press-office/2017/02/03/presidential-memorandum-fiduciary-duty-rule
[2] *Id.*
[3] 82 Fed. Reg. at 12,320 (Mar. 2, 2017).
[4] *Id.* at 12,319.
[5] DOL Employee Benefits Security Administration, *Temporary Enforcement Policy on Fiduciary Duty Rule*, Bulletin No. 2017-01 (Mar. 10, 2017), available at https://www.dol.gov/agencies/ebsa/employers-and-advisers/guidance/field-assistance-bulletins/2017-01

sending out required disclosures or other documents to retirement investors, within a reasonable period after the publication of a decision not to delay the April 10 applicability date. The Department will also treat the 30-day cure period under Section IX(d)(2)(vi) of the BIC Exemption and Section VII(d)(2)(v) of the Principal Transactions Exemption as available to financial institutions that, as of the April 10 applicability date, did not provide to retirement investors the disclosures or other documents described in Section IX(d)(2)(vi) of the BIC Exemption and Section VII(d)(2)(v) of the Principal Transactions Exemption.

Although this case was originally defended by the DOL in the Obama administration, the injunction request is vigorously opposed by the DOL under the current administration.

**II.    Analysis**

The Court considers four factors in determining whether to grant an injunction pending appeal: 1) the likelihood that the moving party will ultimately prevail on the merits of the appeal; 2) the extent to which the moving party would be irreparably harmed by denial; 3) the potential harm to opposing parties if the injunction is issued; and 4) the public interest.[6] *Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 957 (5th Cir. 1981). To obtain an injunction pending appeal, Plaintiffs must satisfy each of these elements. *Fath v. Tex. Dep't of Transp.*, 16-51281, 2016 WL 6574088 (5th Cir. Nov. 4, 2016) (citing *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011)).[7] An injunction is an extraordinary remedy and is never awarded as of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

First, this Court has already found Plaintiffs' position on the merits unpersuasive, two other district courts have reached the same conclusion in similar cases, and neither court has enjoined enforcement of the rules.[8] Plaintiffs have not presented any arguments that would cause

---

[6] Plaintiffs argue the first factor for an injunction pending appeal is whether there is a substantial case on the merits. In this Circuit, that standard only applies if there is a serious legal question at issue *and* the other three factors weigh in the movant's favor. *Ruiz v. Estelle*, 650 F.2d 555, 565–66 (5th Cir. 1981). This is not the case here.
[7] *See also Def. Distributed v. United States Dep't of State*, 838 F.3d 451, 457 (5th Cir. 2016); *see also Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 622 (5th Cir. 1985); *Fantasy Ranch, Inc. v. City of Arlington, Texas, CA*, 3:03-CV-0089, 2004 WL 2974269 at *1 (N.D. Tex. Dec. 20, 2004).
[8] *See Nat'l Ass'n for Fixed Annuities v. Perez*, 16-cv-1035 (RDM), 2016 WL 6573480 (D.D.C. Nov. 4, 2016); *Mkt. Synergy Grp. Inc. v. U.S. Dep't of Labor,* 16-cv-4083-DDC-KGS, 2016 WL 6948061 (D. Kan. Nov. 28, 2016). The

the Court to question its decision or persuade it that the Fifth Circuit is likely to reach a contrary conclusion. The first factor thus weighs against granting an injunction.

Second, Plaintiffs argue they would suffer irreparable harm without an injunction because they will face unrecoverable compliance costs due to the impending effective date of the statute. Plaintiffs indicate they have incurred compliance costs before and throughout this litigation, and that the industry has already done much preparing to comply.[9] Compliance costs already incurred cannot constitute the irreparable harm Plaintiffs must show because the standard is inherently prospective. Plaintiffs do not argue that additional compliance costs between now and the applicability date would be substantial or prohibitively expensive. *See Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980) (citing *A. O. Smith Corp. v. F.T.C.*, 530 F.2d 515 (3d Cir. 1976) (holding "an injury resulting from attempted compliance with government regulation ordinarily is not irreparable harm")).

Even if the final rules go into effect on April 10, 2017, the deadline for providers who wish to rely on the Best Interest Contract Exemption ("BICE") is not until January 1, 2018. Of the seven principal arguments made by Plaintiffs in their Motions for Summary Judgment, five related to the terms and conditions of BICE. Further, the DOL issued a proposal which would delay the rules' applicability by sixty days and is taking public comment on the considerations described in the President's February 3, 2017, memorandum. The DOL also announced it would not initiate immediate enforcement action on the rules even if the April 10, 2017, applicability date were not delayed.[10] Although Plaintiffs argue the DOL may not delay the applicability date

---

D.C. district court and the D.C. Circuit also denied an injunction pending appeal. *Nat'l Ass'n for Fixed Annuities v. Perez*, 16-cv-1035 (RDM), 2016 WL 6902113 (D.D.C. Nov. 23, 2016); *NAFA v. Perez*, 16-5345 (D.C. Cir. Dec. 15, 2016).

[9] ECF No. 144-3.

[10] The DOL has also stated it will take matters of Plaintiffs' concern into account. (ECF No. 152 at 7).

long enough, the DOL has specifically requested "comments regarding whether a different delay period would best serve the interests of investors and the industry."[11] As the DOL notes, whether the industry will incur the costs Plaintiffs suggest is speculative.

Plaintiffs' own statements suggest the circumstances of the new rules make injunctive relief unnecessary. For example, Lisa Bleier's declaration indicates the industry will not incur certain compliance costs until the rules actually become applicable.[12] Her declaration also states industry members have not committed to whether they will use BICE or stop using the commission-based compensation model altogether, and that many firms have not made other irreversible compliance decisions.[13] In short, it appears that the industry is waiting to see if the rules will become applicable, and if they do, the industry apparently will take the requisite actions. This supports the conclusion that the DOL's actions will have a greater impact on compliance and costs incurred by industry members than will the Court possibly enjoining the rules.

Plaintiffs also claim that independent marketing organizations ("IMOs") will be unable to comply with the new rules and will be forced out of business due to an adverse impact on their common distribution model. This contention is no different than the "workability" argument Plaintiffs made in their Motions for Summary Judgment. The Court rejected those arguments, stating that the DOL had considered the IMO distribution model, identified potential solutions,

---

[11] 82 Fed Reg. at 12,321. Plaintiffs also argue delaying the applicability date does not consider the full scope of enforcement risk. However, as the DOL notes, the Secretary of the Treasury is bound by the opinions of the Secretary of Labor with respect to these rules. *See* 29 U.S.C. §§ 1203(a), 1204(a), 5 U.S.C. App. 1. Private enforcement is also unlikely because fiduciary duties already apply to potential civil actions stemming from employee benefit plans under 29 U.S.C. § 1132. Finally, the DOL has the authority to grant any affected industry member retroactive relief, and stated it is open to doing so in its most recent bulletin. ("To the extent that circumstances surrounding the decision on the proposed delay of the April 10 applicability date give rise to the need for other temporary relief, including prohibited transaction relief, [DOL] will consider taking such additional steps as necessary.").
[12] ECF No. 144-3 at ¶ 7.
[13] *Id*. at ¶¶ 7-8, 12.

and addressed industry concerns. For example, the DOL revised the final version of BICE to allow IMOs to petition for an individual exemption from the rules. Even if Plaintiffs' concerns regarding the IMO distribution model were warranted, Plaintiffs have not demonstrated that the outcome they forecast is likely in the absence of an injunction. *See Winter*, 555 U.S. 7, 22 (2008) (holding the Ninth Circuit's possibility standard was too lenient, and that the party seeking injunctive relief must show irreparable injury is *likely* in the absence of an injunction); *see also United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001). Moreover, the DOL has proposed a new rule granting a new exemption to insurance intermediaries (ECF No. 129). The DOL has indicated it would make this exemption available by April 10, 2017. The comment period has already closed, and several of the Plaintiffs commented on the proposal.[14] Weighing these considerations, the Court is not persuaded that immediate relief is necessary to avoid irreparable injury, and the second factor thus weighs against granting an injunction.

Third, Plaintiffs argue the DOL would not be harmed by an injunction. Congress gave the DOL express statutory authority to grant conditional or unconditional exemptions from ERISA's prohibited transactions. As the Court has already held, Congress also gave the DOL "broad discretion to use its expertise and to weigh policy concerns when deciding how best to protect retirement investors from conflicted transactions." *Chamber*, 2017 WL 514424 at *18. Here, the President's memorandum dictates that the DOL re-examine the rules by balancing costs and consumer access against conflicted advice to retirement investors.[15] Fifth Circuit precedent dictates "a court should take no action calculated to interfere seriously with an agency's ability to apply its expertise to solve those technical and complex regulatory problems which have been entrusted to it." *State of Tex. v. Seatrain Intern., S. A.*, 518 F.2d 175, 180 (5th Cir. 1975).

---

[14] *See* https://www.dol.gov/agencies/ebsa/laws-and-regulations/rules-and-regulations/public-comments/1210-ZA26
[15] *See* 82 Fed. Reg. at 12,323.

Granting an injunction would interfere with the DOL's statutory authority, its expertise, and its policy-making role. The third factor thus weighs against granting an injunction.

Fourth, Plaintiffs argue the public interest favors granting an injunction. Throughout the rulemaking process and this litigation, the parties, the industry, and commenters disputed whether the rules are in the public interest. The premise of the DOL's rules are that those who provide investment advice to ERISA and IRA plans have conflicts of interest, and absent further protection, the public will be harmed. During the rulemaking, the DOL concluded that consumers needed protections from conflicted advice with respect to fixed indexed and variable annuities due to their complexity and risk. The Court found that the DOL acted reasonably in so concluding. In the Court's view, Plaintiffs have not provided significant evidence in contravention of the DOL's reasonable conclusions, so the Court defers to the DOL's judgment. The fourth factor thus weighs against granting an injunction.

### III.   Conclusion

Plaintiffs have not met their burden to satisfy the four factors required to obtain an injunction pending appeal, and the Motions for Injunction Pending Appeal are therefore **DENIED**.

**SO ORDERED.**

March 20, 2017.

_____
BARBARA M. G. LYNN
CHIEF JUDGE